And Attorney Smith, I am told that you'd like to reserve one minute for rebuttal. That is correct, Your Honor. All right, we will do that, and when you're ready, you may proceed. Thank you, we're here today because Plaintiff Appellant Jennifer Carr was employed as middle manager at the New York City Transit Authority. She complains that she was the subject of a retaliatory hostile work environment. The district court erred by not applying the correct standard under Burlington to a retaliatory hostile work environment. In fact, the district court did not even analyze her- What is the correct standard for applying retaliation? Under the Burlington standard, that would be, in our opinion, a reduced standard that if a reasonable employee in plaintiff's position would have been dissuaded from filing or supporting a charge of discrimination, that would meet the Burlington standard. Instead, the standard that was applied was a standalone hostile work environment claim. You don't have such a claim. I don't have such a claim. It was always retaliatory, and it was retaliatory. So, counsel, I mean, it seems a little like we've got a hybrid between hostile work environment and retaliation. Shouldn't the test, should the test be some hybrid of the test between retaliation? So, what you said, but a level of pervasiveness of the hostile work environment allegations that would deter a reasonable employee in the same position from bringing a claim. Well, certainly, Pellant has stated such a claim. Because her hostile work environment included severe increases of work, her work load basically doubled. She was added elevators and escalators in October of 2014. Then in the first quarter of 2015, she was added the employee training manual, which there is a separate department for human resources for that job. Then she was made to do or revamp the operating budget impact statement. And if she wanted to move on to the organization, wouldn't she welcome more responsibility? Well, she certainly would welcome more responsibility if she got the promotion, but she didn't. And also, at the same time as increasing or heaping this work upon Ms. Carr, they took away her help. She had up to three staff analysts, and when she was doing all of this work, she had none. Zero. And then David Chang complained that she was making typos in her work, and that she was meeting, and that she was missing deadlines. This retaliation that you just rehearsed for us was, you claim in response, occurred when? Well, the retaliation really occurred beginning, or I'm sorry, retaliation really started in, right on the heels, I would say, December of 2014. Okay, that was specifically retaliation for what? Well, she had complained about being denied promotions. That was the first promotion. The first promotion was the Program Manager Oversight promotion that she was denied in 2014. And then the second promotion was the promotion to Senior Director of Program Analysis, which is, as they colloquially stated, Senior Director of Communications. She had been in that job since 2004. That's what I was going to ask. She did that job. From 2004. And she did it really all by herself from 2010 until 2013, getting all excellent reviews. But you still haven't answered Judge Parker's question. What started this retaliation? Well, Marva Brown said to Carr on August 20th, look, you're not the right fit. You're not ready for the next level. So I'm denying you this job. I'm giving it to David Chan, who is a male. That's the second. No, that's the second one. No, that was the second one. But the first one. She gave it to Dee Lorenzo. Yeah, she gave it to Dee Lorenzo, who was a younger white male. And he got the oversight position. So she wanted that position. But she was really, really kind of taken aback when Marva Brown told her, listen, I'm going to deny you the promotion in the job that you've been working since 2004. Was that race-based? Well, we believe it's primarily age-based. Because the person who got it was within 10 years younger than her. 52, right? About 52. She was, I believe Plaintiff was 59 at the time. And the person who got the job was 52. But he had, he even. And the promotion was, she's Caribbean American. And the promotion was denied by another. Caribbean American. So was that race-based? Yeah, no. I think it's age-based. We think it's age-based. And Marva Brown showed a significant amount of animus. Because when Marva told her that I'm denying you the job, she also tried to appease her by offering her the New York City Leadership Institute. But once she told her that she was denied the job, Jennifer went directly to Marva's supervisor, Joe Leder, on August 21st. And to complain about unfair promotional hiring practices. And she asked for a transfer. Once Marva Brown heard that, that very same day from Joe Leder, Marva Brown told Jennifer, I told you not to go to my boss. Right? And so once, and that's the direct evidence of retaliatory animus. Sounds like the atmosphere at the Transit Authority was unpleasant. Very unpleasant. After she went to Marva Brown's boss, it got worse for her. Absolutely. Absolutely. Because after she went to her boss, then she made another complaint to EEO September 3rd. Then she made a formal complaint to EEO September 23rd. And then Marva Brown had to answer up to Transit EEO in September 29th. David took the job and he came on in October of 2014 in a part-time capacity. He didn't go full-time until December. But as soon as he came on board in October 2014, he added elevators and escalators to Jennifer's workplace. And elevators and escalators. And took her office. And took her office. Absolutely. And that was right on the heels. That was right on the heels of her complaining. And then Jennifer complained again to the EEO on February 18th of 2015. Saying, David Chan and Marva Brown are sending me all these harassing emails. And disrespectful emails. And increasing my workload. So that, of course, looks back. The February complaint looks back to January. Pardon? You think they were just trying to get rid of her? Absolutely. I think they were sending a loud message that this is what you get when you complain about Marva Brown not promoting you. It was a loud message that they sent. Because although it was not a discreet act of retaliation when she got two marginals on her 2014 NPR. It was a part of the hostile work environment. As was the 2015 NPR. Where she got three marginals. Now this is a woman who got all excellence before. And then in 2016, she got some needs improvement. Lost the 2% raise that all managers got. You do know that we can't second guess employment choices by the transit authority. If these women just didn't get along, oil and water, we can't really intervene in that kind of situation. This is very objective. This kind of- Than Jennifer did? They both said they had wonderful interviews. That sounds kind of subjective to me. No, I think that with respect to the PMO and the PMA interview panels were very different. The PMO interview panel had three managers directly from the capital programs unit. And one human resources. For the analysis job, there's only two managers. That was Marva Brown and someone from capital program management. It's a completely different program. And so Marva would have been the sole decision maker there. Because she had a higher rank than the other person on the panel. And she chose to give it to David Chan. She said she wanted to go in a different direction. But David Chan said at his deposition, he admitted that, yes, Jennifer has more knowledge than me. Yes, she has more experience than me coming in. Then he said, well, maybe not now. But coming in, he had to admit that. And see, Marva said that, oh, it's a technical thing. But there's no requirement for technical listing in the job postings. Amy Kaufman did not have a technical background. Joan Newbold did not have a technical background. They were both prior senior directors. And Donald Fang, who was an engineer, who had a technical background. In his affidavit, he said, I never used my technical background because it was not needed. So what Marva said was a complete, absolute pretext for what is otherwise discrimination. Okay. Thank you, counsel. You do have a minute on rebuttal. We'll hear from attorney Thompson. I may. He's a bit tall. May it please the court. Good morning, your honors. My name is Mariel Thompson. I represent the defendants in this case. The district court's decision in this case should be affirmed. Despite the many work-related grievances she had against her managers and the fact that she disagreed with the promotional decisions by Marva Brown, the record reveals no evidence, direct or indirect, of retaliatory animus or discriminatory animus on the part of the defendants. Counsel, isn't it true that the hiring group, the panel, who chose the two promotions, thought the engineering background was important? They did think it was important. But it wasn't an engineering job, was it? No, but they worked routinely with engineers. They were overseeing communications and elevators and escalators. And at some point, line structures. And what Marva Brown said, and this was one of many factors, what Marva Brown said was that it was important to her if there was a highly qualified candidate who happened to have that background. It was important to her in filling that role. That's a business judgment. But no one ever mentioned that Jennifer had a master's in public administration from New York University. What about that? It's not in dispute. It is not in dispute that she was qualified for the job. Marva Brown had been working with her for many years, as was one of the other panelists on the interview panel. Who, yes, was from a different area, but regularly interfaced with capital programs and subways. And what she said, she felt that the plaintiff lacked the ability to really be a team player. And she often pitted the departments against each other instead of facilitating resolutions. So there were elements of plaintiff's working style that she felt wouldn't lend themselves to the next level. So she didn't recommend plaintiff as her top choice. But she did her job for which she didn't get the role. She was doing her job in the less senior role, yes. She was doing that job. But that's not evidence of discrimination. These are business judgments. When David Chan wrote to her on November 25th, 2014, saying how bad her memo was, he also sent it to 20 people, starting with Dominic Gallo all the way to John Decker. I can read the list of people. That sounds like someone trying to make a record, not trying to educate the recipient of the letter. If my recollection serves me well, I know that email chain. And what may have been missed is that, I believe initially, she sent an email CC'ing all of those people, and he was responding to that email. She sent what she was supposed to do, which is the report of the OBI meeting. In any event, these work-related emails that she claims were disrespectful, or their tense relationship. When David Chan started his new role, he introduced herself. This is not disputed. He introduced herself. He said, I'm excited to work with you. And she said, don't worry. I won't be here when you get here. It is undisputed she was unhappy. She was actively seeking a transfer out of the unit. She did not discuss discrimination with Joe Leder, despite what counsel has suggested. And in fact, she testified, no, I did not discuss discrimination with Joe Leder. Subsequent to her request for a transfer, she went to EEO and she filed a formal complaint. Accusing, by the way, as you noted, a woman in all the same protected categories as her, of race, age, and gender discrimination. And a woman who helped advance her career the year prior to these promotional decisions. She also, counsel tries to, plaintiff tries to use evidence that she, you know, tried to appease her by sending her to a leadership institute program. That's not what she was doing. She was trying to get her the skills, the leadership skills that are necessary to advance in the authority that other managers felt she was lacking. She did perform her job well at the level she was at. But they felt she wasn't ready for the next level. And there's nothing discriminatory about that. And she bases her entire claim, both on discrimination and retaliation, on speculation and feelings. Counsel, can you speak to what you understand to be the right standard for hostile work environment retaliatory claim? Absolutely. The case law is clear. And Duplan, this court stated it, that even in the retaliation context, if you're trying to demonstrate that you were subject to a retaliatory hostile work environment that in itself is an adverse employment action that would dissuade an employee from complaining, you still have to show severe and pervasive discriminatory conduct. That simply doesn't exist here. And she has not connected any of these work-related issues or criticisms by David Chan to the fact that she engaged in protected activity. And in fact, David Chan rated others in his group much more harshly than her. He, in fact, at the same time that he was giving her an overall good review following her complaint of discrimination, he gave a younger white male who hadn't engaged in review and this person ultimately resigned in lieu of termination. He cited the same things, untimely work, failure to cooperate. He had high expectations as a manager. But no one ever complained about untimely work before David Chan came and started ranking her. Her previous supervisors all thought she was excellent except for the one year when she got a good. Well, courts have held for very good reason. That you can't rely on prior good reviews, particularly when they were different managers, to raise an inference of retaliatory intent against a new manager. Do you have an explanation for that? Yes, I sure do. I believe even in a recent decision by the Second Circuit, Bentley, Ammons, and I'll get that. This would be 2022 U.S. App, Lexis 7999. So it's a district court case? Is it from the circuit at least? This was a circuit decision, I believe. Yes, March 28th, 2022. Bentley, Ammons v. Northwell Health. And I'll quote, generally an employee may not create an issue of fact supporting a finding of pretext by questioning an employee's assessment of her job performance. And the claim that an employee never received comparable feedback from her prior manager standing alone does not support an inference that her new supervisor's criticisms were pretextual. But even just discussing the undisputed facts at hand, there were documented instances of missed deadlines that she agreed to. She proffered excuses to her managers saying, I have no affiliation with buses. I'm not going to work with them. Or this assignment, a communication strategy, which she prides herself on being an expert in, she said, I don't, this requires technical expertise. I'm not going to, I can't do this. I'm not qualified to do this. She was given this assignment in August of 2016, well after she complained about discrimination. She continued to object to that assignment for close to a year. And her managers provided her with guidance. It's all in the record, saying you can go to- Just to be clear, counsel, with respect to Judge Pooler's question, would you agree we can look to the change in performance evaluations for purposes of establishment of a prima facie case of retaliation, but you're arguing that we can't draw an inference of pretext? No, I would say both. I would say you can't, you can't use prior reviews from a different manager under different circumstances to create an inference of retaliatory intent. The case she raised on that point was on pretext. Yes, the case that I cited too, there's other case, I believe it's Thornley. And I can, I know I've cited them in my papers, if I can. Yeah, okay. Davies v. Department of Education, 818-8, sorry, 563-FED-A-PPX-818. The plaintiff claims that for the past 20 years, she's had a sterling performance record, but she cannot use her past performance to shield her from two years of unsatisfactory performance evaluations. Yeah, I don't think that answers the question. I believe I did cite to case law in my briefs to the district court and on appeal, and I, stating that it also can't support a retaliatory intent, particularly when it's a new manager who is entitled to set his own expectations that might be different from a prior manager. But even if she could meet the prima facie case, which we argue she could not, and she has not established an inference of retaliation based on the prior reviews. There are legitimate non-retaliatory reasons documented in the record for her slightly less positive reviews, her overall good review with two marginals in the years following her complaints, and for the overall needs improvement review, which came two years following her protected activity. That's impermissibly long to infer retaliation. Thank you, counsel. Attorney Smith, you have one minute. On the causation piece, where in 2016 she got a needs improvement, she had just filed her federal complaint in that situation in December 2016, and she amended the complaint January 4th, 2017, and then the transit answered the complaint in March 2017, and then a week later she was given a needs improvement. And then on the NPR that needs improvement for 2017, in November 27th, November 28th, Marva Brown and David Chan were deposed during the federal case, and then within two weeks she got her 2017 NPR also with needs improvement. And just briefly, her job load doubled, more than doubled. Her core job duties are already full-time, then with the five additional job duties that they gave her, it doubled, and they never replaced her analyst help. And in the affidavits, it says that David Chan told them, don't go to Jennifer, don't go to Jennifer. And Andrew Zaldos, who was an analyst, he did go to Jennifer for help, and he was terminated. Thank you. That's all right. Thank you, counsel. Thank you to both oralists. We appreciate it, and the matter is taken under advisement.